<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEVEN R. GOMES, JR. on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>EXTRA SPACE STORAGE, INC. and EXTRA SPACE STORAGE MANAGEMENT, INC., and JOHN DOE COMPANIES 1-50.<br><br>*Defendants*. | Civil No.: 13-0929 (KSH) (CLW)<br><br><br><br><br><br>**Opinion** |

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

Steven R. Gomes, Jr. ("Gomes") has filed a class action complaint on behalf of himself and all others similarly situated against defendants, a self-storage facility where he rented a storage unit, and its parent and subsidiaries. (D.E. 1-1.) He alleges that the terms of the rental agreement ("Agreement") that he entered into with defendants, and a Notice of Lien and Foreclosure ("Lien Notice"), which he received from them, violated various statutes. He also claims that defendants neglected to follow the prescribed procedure before selling his property for his non-payment of rent. Defendants removed this action from state court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d),[1] (D.E. 1, "Notice of Removal."), and now bring a motion to

---

[1] Defendants invoke CAFA because the amount in controversy exceeds $5,000,000 and there is minimal diversity between a member of Gomes's proposed class and defendants. *See* 28 U.S.C. § 1332(d).

dismiss several of Gomes's claims in his amended complaint. (D.E. 40.) As set forth below, the motion will be granted in part and denied in part.

## II. Background

### A. Factual Background

The following facts and procedural history are taken from the amended complaint and attached exhibits. The Court draws all reasonable inferences from the facts in favor of Gomes. *See Phillips v. Cnty. of Allegheny*, 515 F3d 224, 231 (3d Cir. 2008) (citation and internal quotation marks omitted).

On September 15, 2011, Gomes entered into the Agreement with defendants Extra Space, Inc. and Extra Space Management, Inc.[2] for the lease of a self-storage unit in Hackensack, New Jersey. (Am. Compl., ¶ 12.) Defendants drafted the Agreement, which provided that Gomes would pay $80.00 rent and $5.60 in sales tax on the 15th of each month. (*Id.* ¶¶ 11, 14; D.E. 34-1 "Rental Agreement" at 1.) The Agreement imposed penalties for late payments, which included: a $10.00 charge if the rent was five days late; an additional $15.00 fee if the rent was 15 days late; and if the rent was not paid within 30 days, an $85.00 "pre-foreclosure fee." (Rental Agreement at 2.) The Agreement further required Gomes to pay all expenses defendants incurred in attempting to collect any unpaid rent. (*Id.* at 3.)

In the event of Gomes's non-payment, defendants could sell his "stored personal property at public or private sale" "in a commercially reasonable manner after giving [him] reasonable notice." (*Id.* at 2.) Gomes's involuntary or voluntary bankruptcy would be considered a default event. (*Id.*) The Agreement also contained a contractual statute of limitations, restricting lawsuits and counterclaims by Gomes to "one (1) year after the accrual of the cause of action or one (1)

---

[2] Gomes also names John Doe Companies 1-50 as defendants, which he defines as "unidentified subsidiaries, affiliates or other related entities that may have been involved in the conduct." (D.E. 34, "Am. Compl.," ¶ 7.)

year after the claim arises, whichever is shorter, whether known or unknown when the claim arises." (*Id.* at 3.)

In addition to the Agreement, Gomes and defendants also executed an insurance contract attached as an addendum to the lease. (*Id.* ¶ 22.) This provided that a third-party insurance company would offer insurance for a $9.00 monthly premium. (D.E. 34-2, "Insurance Agreement" at 1.) The terms required Gomes to submit the premium to defendants, who would then forward it to the insurance company on his behalf. (*Id.*) The insurance coverage continued month-to-month as long as Gomes remitted the premium to defendants; a missed premium would result in cancellation of the insurance policy without notice. (*Id.*)

Gomes used the unit to store his personal property and alleges that he timely paid rent and the insurance premium for the months of September through November 2011. (Am. Compl., ¶¶ 26, 27.) He did not pay the rent and insurance premium in December 2011 and January 2012. (*Id.* ¶ 28.) As a result, defendants sent him a Lien Notice dated January 19, 2012, which indicated that if he failed to pay the balance due of $299.20 within 15 days of January 19, 2012, his personal property "will be advertised for sale and sold at public auction." (*Id.* ¶ 29; D.E. 34-3, "Lien Notice" at 1.) The Lien Notice listed the auction date as February 16, 2012; 27 days after defendants mailed it. (Lien Notice at 1.)

According to Gomes, however, the $299.20 demand overcharged him by $18.00. (Am. Compl., ¶ 33.) Gomes asserts that under the Agreement he owed defendants $281.20 consisting of $171.20 for the missed rental and tax payments of $85.60 from December 2011 and January 2012; $25 in late fees for December, which include the $10.00 fee for being five days late with rent and the $15.00 fee for being 15 days late; and $85.00 as a "pre-foreclosure fee." (*Id.*) The

$18.00 overcharge came about, according to Gomes, because of the $9.00 insurance premiums for December and January, which he claims he was not obligated to pay. (*Id.* ¶ 34.)

After receiving the Lien Notice, Gomes alleges that he spoke with a woman with the surname "Montero," who was defendants' Assistant Manager at the Hackensack location. (*Id.* ¶ 40.) She told him that defendants would not hold the auction until March 15, 2012, and that up until then he could redeem and recover his property. (*Id.* ¶¶ 40, 41.) Gomes's girlfriend Stephanie Cave went to redeem and recover the property in early March 2012, and was told that defendants had already sold his property at a public auction on February 16, 2012. (*Id.* ¶ 42.) Upon learning about the sale, Gomes contacted a man named "Jason," who was defendants' regional manager. (*Id.* ¶ 43.) Gomes claims Jason admitted that defendants held the auction in error, because "Ms. Montero had provided wrong information." (*Id.* ¶ 43.)

At some point after speaking to Jason, Gomes alleges that he discovered that defendants advertised the auction in The Bergen Record on February 6 and February 13, 2012. (*Id.* ¶ 44.) He says the advertisement listed the auction date as February 16, 2012. (*Id.*) Gomes contends that defendants received approximately $445.86 from the sale, and after deducting the amount owed in rent, late fees, and costs, they remitted the remaining $155.04 to him by check. (*Id.* ¶¶ 48, 49.) Gomes estimates the value of his property to be $8,747.00. (*Id.* ¶ 47.)

B. **The Complaint**

Gomes filed an amended, five-count complaint on October 1, 2014. (Am. Compl.) In it, he divides the representative class into five subclasses. (*Id.* ¶ 52.) Subclass #1, the "Overcharge Subclass," consists of those whom defendants allegedly overcharged in unpaid rental fees by including insurance premiums in the balance due. (*Id.*) Gomes defines Subclass #2 as the "Unconscionable Late Fee Subclass," which is comprised of members who were "charged a late

4

fee of $25 or more and/or a 'pre-foreclosure' fee of $85 or more in any one month rental period." (*Id.*) Subclass #3, labeled the "Premature Sale Date Subclass," is made up of members to whom defendants sent a Lien Notice, "in connection with unpaid rental fees at a New Jersey location that listed an 'Auction Date' that was less than the minimum time period required by the" New Jersey Self-Service Storage Facility Act ("NJSSFA"). (*Id.*) Gomes identifies Subclass #4 as the "Premature Sale of Property Subclass," which includes those "whose property was sold by Defendants at a public auction" before the minimum time period required by the NJSSFA. (*Id.*) Last, Subclass #5, or what this Court will call the "Non-Deposit Subclass,"[3] consists of members "whose property was sold by Defendants at public auction and for whom Defendants, after satisfying their lien, failed to deposit the balance of the auction proceeds in an interest-bearing account" and give notice of the amount and where deposited as mandated by the NJSSFA. (*Id.*)

1. **Count 1**

In count 1, Gomes alleges that the Agreement violated the New Jersey Truth-in-Consumer, Contract Warranty and Notice Act ("NJTCCA") because it contains a number of "provision[s] that violate[] the consumers' rights or business's responsibilities under clearly established New Jersey or federal law." (*Id.* ¶ 68.) The clearly established laws he cites include the NJSSFA, the United States Bankruptcy Code, the New Jersey Consumer Fraud Act ("NJCFA"), and the NJTCCA itself. (*See id.* ¶¶ 16(a), 72, 73.)

Gomes contends that the Agreement conflicts with the NJSSFA by providing for a public or private sale of property, whereas the NJSSFA permits only a public sale. (*Id.* ¶ 69(a).) Further, he takes issue with a clause that states that defendants may sell a tenant's property in a "commercially reasonable manner" because it does not describe the exact procedure for doing so

---

[3] Gomes named Subclass #5 the "Premature Sale of Property Subclass," which is the same label he used for Subclass #4. To avoid confusion, the Court has adopted its own title for Subclass #5.

as dictated by the NJSSFA.  (*Id.* ¶ 69(b).)  Gomes also contends that the one-year contractual statute of limitations "impermissibly shorten[s] the statute of limitations for actions under the [NJ]SSFA."  (*Id.* ¶ 69(e).)

Gomes raises one allegation relating to the Bankruptcy Code, contending that by defining a tenant's bankruptcy filing as a default event, the Agreement violates Section 365(e) of the Bankruptcy Code because it would terminate or modify a lease after a bankruptcy case is commenced.  (*Id.* ¶ 69(c).)

As for Gomes's NJCFA allegations, he claims that the Agreement's aggregate late fees of $110.00 per month are excessive and constitute an unconscionable commercial practice.  (*Id.* ¶ 69(d).)  Consistent with his claims under the NJSSFA, Gomes also characterizes the one-year contractual statute of limitations as an unconscionable commercial practice, this time under the NJCFA.  (*Id.* ¶¶ 69(e), 72.)

Turning to his claims founded solely on the NJTCCA, Gomes again cites the contractual statute of limitations as impermissibly shortening the Act's six-year limitation.  (*Id.* ¶¶ 69(e), 71, 73.)  In addition, he contends that, because the Agreement does not inform consumers which provisions are inoperable in New Jersey, it violates the NJTCCA.  (*Id.* ¶¶ 74, 75.)

    **2.**    <u>**Count 2**</u>

In count 2, Gomes alleges that the Lien Notice contravenes the NJTCCA, because its provisions violate clearly established legal rights, which in this count are found in the NJSSFA and NJCFA.  Under the NJSSFA, he claims that the Lien Notice denies a tenant the right to redeem his or her property prior to sale and also provides for an auction date before the minimum period of time allowed by the Act.  (*Id.* ¶¶ 80(c), (d), (e).)  In addition, Gomes claims the Lien Notice's late fees are excessive and constitute an unconscionable commercial practice under the NJCFA,

6

and he contends that the Lien Notice also violated the NJCFA by misrepresenting the balance due through its inclusion of the third-party insurance premiums. (*Id.* ¶¶ 80(a), (b).)

### 3. Count 3 and Count 4

Counts 3 and 4 allege claims solely under the NJCFA by repeating the same contentions raised in counts 1 and 2, specifically that defendants violated the NJCFA by including the third-party insurance premiums in the balance due and by charging a "pre-foreclosure fee" and late fees that are excessive and unconscionable commercial practices. (*Id.* ¶¶ 86, 93.)

### 4. Count 5

Count 5 echoes count 2's claim that the Lien Notice violates the NJSSFA by not specifically describing its notice-and-wait procedure for selling a tenant's personal property, but in this count Gomes claims defendants violated the NJSSFA by not adhering to that procedure before selling his personal property. (*Id.* ¶¶ 98, 99.)

## C. Defendants' Motion to Dismiss

On November 5, 2014, defendants filed a motion to dismiss all of Gomes's claims under counts 1 and 4, and some of the claims in count 2. They do not move to dismiss Gomes's claim in count 2 that alleges that defendants violated the NJCFA and the NJTCCA by including the third-party party insurance premiums in the Lien Notice's statement of the balance due, nor do they move to dismiss counts 3 or 5 relating to the timing of the sale of his property.

## III. Discussion
### A. Standard of Review

In order for a complaint to survive dismissal under Fed. R. Civ. P. 12(b)(6), it must put forth sufficient facts to show "that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[W]hen the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" a

7

claim will survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), but a complaint containing only "conclusory or 'bare bones' allegations will" not. *Fowler*, 578 F.3d at 210.

In reviewing a motion to dismiss, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard legal conclusions." *Id.* at 210-11. "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* at 211. The facts need not show a probability of relief, but need only show a plausibility of relief. *Iqbal*, 556 U.S. at 678.

### B. Count 4 - NJCFA Claims

The NJCFA prohibits "[t]he act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate." [4] N.J.S.A 56:8-2. It is designed to provide a remedy for "[a]ny person who suffers any ascertainable loss" from an unlawful act. N.J.S.A. 56:8-19. To meet that remedial purpose, the NJCFA is to be liberally construed. *Lee v. First Union Nat'l Bank*, 199 N.J. 251, 257 (2009).

The "capacity to mislead . . . is the prime ingredient of all types of consumer fraud." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 414 (1995) (citation and internal quotation marks omitted). To state a cause of action, a plaintiff must show: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). Furthermore, an NJCFA claim must satisfy the heightened pleading standards of Fed. R.

---

[4] Included within the term sale is "any sale, rental or distribution." N.J.S.A. 56:8-1(e).

8

Civ. P. 9(b) for asserting a cause of action founded on fraud. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Gomes alleges that defendants committed an unlawful act by charging late fees and a "pre-foreclosure fee" that are excessive and unconscionable commercial practices in two paragraphs in count 4.

> 92. The $10.00 and $15.00 late fees and/or $85 "pre-foreclosure fee" that Defendants charge Plaintiff were excessive and imposed by Defendants as a penalty rather than a reasonable estimate of damages resulting from late payment.
>
> 93. By imposing the $10.00 and $15.00 late fees and/or $85 "pre-foreclosure fee", (sic) Defendants engaged in unconscionable commercial practices within the meaning of that term in N.J.S.A. 56:8-2.

(Am. Compl., ¶¶ 92, 93.)

There are no factual underpinnings for the claims that the fees violate the NJCFA. Gomes offers no means for the Court to assess whether defendants' late fees or "pre-foreclosure fees" are excessive, he simply concludes as much. In *Green v. Morgan Properties*, 215 N.J. 431, 455-56 (2013), the plaintiffs provided a measuring stick, alleging that the attorney's fees that their lease agreement required them to pay in the event of an eviction bore little relationship to the work involved and that, because the work was completed by the defendants' in-house counsel, a salaried employee, they did not reflect the actual costs. *Id.* Gomes has not indicated the amount customarily charged as a late fee or "pre-foreclosure fee" in a self-storage rental agreement in New Jersey, or shown, insofar as the fees represent liquidated damages,[5] that the fees are disproportionate to the defendants' actual costs when a tenant fails to pay rent. By not "inject[ing] precision or some measure of substantiation into [his] fraud allegation," Gomes's NJCFA claim in

---

[5] In New Jersey, late fees are considered liquidated damages provisions. *See MetLife Capital Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 159 N.J. 484, 495 (1999). Liquidated damages clauses are intended to reflect a reasonable estimate of damages from a breach of contract when actual damages are difficult to forecast. *CSFB 2001-CP-4 Princeton Park Corporate Ctr. v. SB Rental I, LLC*, 410 N.J. Super. 114, 121 (App. Div. 2009).

count 4 falls markedly short of the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Frederico*, 507 F.3d at 200; *see also Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 5392845, at *6-8 (D.N.J. Dec. 22, 2010) (Linares, J.) (dismissing plaintiff's NJCFA claim when they merely asserted that fees were unfair and unreasonable).

Defendants also argue that Gomes fails to state a plausible claim for relief in count 4 because by paying the amounts as fully disclosed in the Agreement, he did not suffer an ascertainable loss. The fact that the fees were disclosed in the Agreement does not automatically prevent a NJCFA claim. *See Ciser v. Nestle Waters N. Am., Inc.*, No. 2:11-05031, 2013 WL 5774121, at *4 (D.N.J. Oct. 24, 2013) (Martini, J.) (examining similar fees in like transaction to determine if it was excessive, even though it was fully disclosed in the contract); *Martina v. LA Fitness Int'l, LLC*, No. 12-2063, 2012 WL 3822093, at *3 (D.N.J. Sept. 4, 2012) (Walls, J.) (finding that a fee constituted an unconscionable commercial practice under the NJCFA when fully disclosed in the contract). But this does not cure the failure to plead facts in this count – absent a showing that the fees are excessive, payment is not plausibly an ascertainable loss.

For the foregoing reasons, count 4 is dismissed.

### C. NJTCCA Claims

The NJTCCA provides that:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any *clearly established legal right* of a consumer . . . established by State or Federal law . . . .

N.J.S.A. 56:12-15 (emphasis added). The NJTCCA's purpose "is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 207 N.J. 428, 457 (2011). "[A] contract or

notice cannot simply state in a general, nonparticularized fashion that some of the provisions of the contract or notice may be void, inapplicable, or unenforceable in some states.." *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 427-428 (2013). "[E]ven though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights." Statement, Bill No. A1660, 1981 N.J. Laws, c. 454, Assemb. No. 1660 (N.J. 1983). A violation of clearly established legal right will also form the basis of an NJTCCA claim when the "alleged wrongdoing [falls] squarely within prohibited conduct under state or federal law." *McGarvey v. Penske Auto Grp., Inc.*, 486 F. App'x 276, 281 (3d Cir. 2012). The statute provides that any person found to violate it shall pay the consumer a civil penalty of at least $100, actual damages, or both, and reasonable attorney's fees and costs. *Shelton*, 214 N.J. at 428.

### 1. <u>Standing</u>

Defendants first seek dismissal of counts 1 and 2, asserting that Gomes lacks Article III standing because he failed to show that he suffered an injury-in-fact under the NJTCCA. The "injury-in-fact element is often the most determinative" of a plaintiff's standing, *Toll Bros., Inc. v. Twp. of Reddington*, 555 F.3d 131, 138 (3d Cir. 2009), and "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Selden*, 422 U.S. 490, 500 (1975). In such a case, a court looks to the statutes under which the plaintiff claims harm to determine if he or she has standing. *See J.T. ex rel. A.T. v. Dumont Public Schs.*, 533 F. App'x 44, 48 (3d Cir. 2013).

Defendants' arguments that counts 1 and 2 fail because Gomes lacks standing are unpersuasive. As will be discussed more fully below, Gomes pleads plausible claims for relief under the NJTCCA by stating claims that defendants violated his clearly established legal rights

11

created by the NJTCCA, NJSSFA, Bankruptcy Code, Federal Rules of Civil Procedure, and New Jersey Court Rules, and as a result, he alleges an injury-in-fact.

### 2. Count 1 – The Rental Agreement

In count 1, defendants seek dismissal of two of Gomes's claims alleging that the Agreement violates his clearly established legal rights under the NJSSFA and three of Gomes's claims founded solely on the NJTCCA. The NJSSFA "concerns the consequences of [a tenant's] failure to pay rent" in a self-service storage facility. *Varasteh v. Storage U.S.A.*, No. L-3491-06, 2009 WL 2045251, at *2 (N.J. Sup. Ct. App. Div. July 16, 2009). It sets out a notice-and-wait procedure, with which a self-storage facility must comply with before selling a tenant's property for the non-payment of rent, *see* N.J.S.A. 2A:44-191(a)-(e), and mandates the sale of that property must be public. N.J.S.A. 2A:44-191(g)

Gomes first claims that the Agreement contravenes the NJSSFA because it provides that "Owner may enforce Owner's Lien by selling Occupant's stored personal property at public or private sale, in accordance with the provisions of the applicable law" when the NJSSFA only allows a public sale. (Rental Agreement at 2.) In another provision, written in capital letters, the Agreement sets forth that the facility "MAY SELL OCCUPANT'S PERSONAL PROPERTY IN A COMMERCIALLY REASONABLE MANNER AFTER GIVING TENANT REASONABLE NOTICE" and that the sale will be conducted "in accordance with the applicable law." Gomes claims this is "contrary to the [NJ]SSFA which requires that a sale may only be made in accordance with strict time requirements." [6] (Am. Compl., ¶ 69(b); Rental Agreement at 2.)

---

[6] Defendants argue that their failure to specifically describe the NJSSFA's notice procedure is an omission and, thus, not actionable under the NJTCCA. While an omission may not be actionable under the NJTCCA, the offering of the contract with the omission constitutes an affirmative act for which defendants could be liable. *See Jefferson Loan Co., Inc. v. Session*, 397 N.J. Super. 520, 541 (App. Div. 2008).

12

Gomes asserts a plausible claim for relief regarding these two clauses. He asserts that the clauses are inconsistent with the NJSSFA's prescriptions and constitute violations of his clearly established legal rights under the statute. He therefore states a claim that those clauses violate state law and, as a result, the NJTCCA as well.

The three clauses Gomes challenges under the NJTCCA do not specify whether or not they are applicable in New Jersey. The first specifies that "in the event the Occupant fails to pay the monthly rental charge, Owner shall have the right to restrict or deny Occupant's access pursuant to the provisions of applicable law." (Rental Agreement at 1.) The second provides: "Except as required by law, or otherwise provided for in the Agreement, written notices or demands may be personally served by electronic mail." (*Id.* at 3.) The last indicates that defendants' self-storage facility "is operated in accordance with the state and local laws governing self-storage facilities, which are incorporated by reference herein." (*Id.* at 1.) Defendants argue that Gomes fails to state a claim because the terms evince an intent to comply with New Jersey law and contain savings clauses that operate to conform the Agreement to NJSSFA and NJTCCA.

The Court disagrees with defendants' argument regarding the savings clauses. They do not "use the magic words of N.J.S.A. 56:12-16." *Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500, 511 (D.N.J. 2014) (Simandle, J.). The provisions imply that they may be invalid in New Jersey by stating they operate only to the extent of the applicable law, but "[i]f N.J.S.A. 56:12-16 means anything, it must mean that" the Agreement needs to contain a declarative statement, as opposed to a conditional one, indicating which provisions are invalid in New Jersey. *Martinez-Santiago*, 38 F. Supp. 3d at 511. Gomes therefore states a plausible claim for relief under the NJTCCA because he alleges that these three clauses are unenforceable in New Jersey, and they do

13

not contain N.J.S.A. 56:12-16's "magic words." As such, defendants' motion to dismiss these three claims is denied.

Defendants next attack Gomes's NJTCCA challenge to language that states "in the event Occupant files a voluntary petition in Bankruptcy or suffers a petition in involuntary bankruptcy . . . Occupant shall be deemed in default." (Rental Agreement at 2.) Gomes asserts this provision contradicts 11 U.S.C. § 365(e), which provides that an "unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified after the commencement of the case solely because a provision in such contract or lease is conditioned on . . . the commencement of a case under this title." Gomes, having stated that a term in the Agreement violates the Bankruptcy Code, states a claim that it violates federal law, and as such, has stated a plausible claim for relief under the NJTCCA. Therefore, defendants' motion to dismiss this claim is denied.

Gomes also alleges that the one-year contractual statute of limitations in the Agreement violates the NJTCCA because it is "an impermissible attempt to have Plaintiff waive rights to bring an action within the six year statute of limitations," and also constitutes an unconscionable commercial practice under the NJCFA by limiting his ability to bring counterclaims after the contractual one-year period has elapsed. (Am. Comp., ¶¶ 72, 73.) As earlier indicated, the specific language of the clause at issue provides that:

> Occupant agrees that no suit or cause of action or other proceeding shall be brought against Owner more than one (1) year after the accrual of the cause of action or one (1) year after the claim arises, whichever is shorter, whether known or unknown when the claim arises . . . .

(Rental Agreement at 3.)

Gomes relies on Judge Simandle's recent opinion in *Martinez-Santiago* holding that the plaintiff stated a plausible NJTCCA claim by asserting that a one-year contractual statute of

limitations violated her clearly established legal right to raise defenses under the Federal Rules of Civil Procedure and New Jersey Court Rules. 38 F. Supp. 3d at 510. The provision in *Martinez-Santiago* not only limited the plaintiff's ability to initiate a lawsuit and bring counterclaims, but also restricted her right to raise affirmative defenses after as well; meaning that after a year had expired the plaintiff could be sued and would be unable to raise any defenses. *Id.* Judge Simandle recognized that "[t]he Federal Rules of Civil Procedure and the New Jersey Court Rules clearly establish legal rights and responsibilities of litigants and dictate the timing to interpose or waive defenses," which extend and continue to operate 12 months after a claim accrues. *Id.* He therefore held that the plaintiff "state[d] a claim that this limitation on raising defenses is overbroad and would violate a clearly established legal right of a consumer in the litigation process" because the provision "appear[ed] to block the right to raise defenses beyond 12 months." *Id.* at 510-11.

Gomes asserts that Judge Simandle's reasoning should extend to the Agreement's one-year limitation to bring counterclaims in response to a suit by defendants. The Court agrees. Both the Federal Rules and New Jersey Court Rules set forth the procedure for advancing a counterclaim. *See* Fed. R. Civ. P. 13; N.J. Ct. Rule 4:5-2. Gomes claims that the Agreement's contractual statute of limitations infringes these clearly established legal rights because it limits his ability to raise counterclaims beyond one year, which is a plausible claim that the limitation violates state and federal law. As such, he also states a plausible claim for relief under the NJTCCA, and defendants' motion to dismiss this claim is denied.

Finally, Gomes asserts that the Agreement contravened the NJTCCA by providing for late fees and a "pre-foreclosure fee" that are excessive in violation of the NJCFA. For the same reasons discussed in connection with count 4, the failure to assert factual underpinnings for this assertion requires dismissal under the "plausibility" standard that applies.

### 3. Count 2 – The Lien Notice

Defendants move to dismiss three of Gomes's NJTCCA claims in Count 2. Two claims assert that Lien Notice violated the NJSSFA and one the NJCFA.

Gomes first alleges that the Lien Notice violates the NJSSFA where it provides in capital letters that if a tenant fails to pay the balance due within the specified 15 days, "AN OWNER'S LIEN WILL BE IMPOSED AND THE PROPERTY YOU STORED WITH US WILL BE ADVERTISED FOR SALE AND SOLD AT PUBLIC AUCTION TO SATISFY YOUR LIEN." (Lien Notice at 1.) According to Gomes, this conflicts with the NJSSFA's provision that states that "[b]efore a sale of personal property the occupant may pay the amount necessary to satisfy the lien." N.J.S.A. 2A:44-191(g).

Gomes states a plausible claim for relief under the NJTCAA. The NJSSFA grants the self-storage facility an owner's lien on a tenant's property stored at the facility the day it is brought there "for rent, labor, or other reasonable charges due as specified in the rental agreement in relation to the personal property, and for expenses necessary for its preservation, or expenses reasonably incurred in its sale." N.J.S.A. 2A:44-189. A self-storage facility may enforce that lien for any claim that is 30 days late by sending a notice to the tenant that includes a demand for payment not less than 14 days after the notice is delivered and may then advertise the sale of the property. *See* N.J.S.A. 2A:44-191(c), (e). Until the property's sale, the tenant has a right to redeem and recover his or her property. N.J.S.A. 2A:44-101(j). Gomes contends that the Lien Notice conflicts with the NJSSFA by divesting a tenant's right to redeem his or her property after 15 days. He therefore states a plausible claim that the Lien Notice contravenes state law and also the NJTCCA. Defendants' motion to dismiss this claim is denied.

Gomes also challenges the Lien Notice for its failure to list the specific property he stored in the unit. The NJSSFA requires a self-storage facility, when giving notice of its intent to sell a tenant's personal property, to "include . . . [a] brief general description of the personal property subject to the lien." N.J.S.A. 2A:44-191(c)(2). That description must allow the tenant to reasonably identify the property. *Id.* However, "any container including, but not limited to a trunk, valise, or box that is locked, fastened, sealed, or tied in a manner which deters immediate access to its contents may be described without listing its contents." *Id.* Defendants argue that a storage unit falls within the definition of a locked container under the NJSSFA, and therefore, there was no need for them to describe Gomes's personal property.

Gomes again states a plausible claim for relief. The NJSSFA provides that the notice must contain a description of the tenant's personal property, and Gomes contends that this description must be as to each item of personal property within the storage unit, which the Lien Notice does not contain. Thus, he alleges that the Lien Notice violates his clearly established legal rights under state law and, accordingly, states a plausible claim for relief under the NJTCCA. The defendants' motion to dismiss this cause of action is denied.

Gomes's third contention that defendants move to dismiss mirrors his allegations in counts 1 and 4 by asserting that the late fees and "pre-foreclosure fee" in the Lien Notice are excessive and unconscionable commercial practices under the NJCFA. For the same reasons discussed regarding his allegations in counts 1 and 4, defendants' motion to dismiss this claim is granted.

### D. Constitutionality of the NJTCCA

Defendants argue that the NJTCCA is unconstitutionally vague because a "clearly established legal right," the statute's critical term, is ambiguous and also because it contains no *mens rea*. "A fundamental principle in our legal system is that laws which regulate persons or

17

entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012). A statute is vague if ordinary people must speculate as to its meaning, *Borden v. Sch. Dist. of E. Brunswick*, 523 F.3d 153, 167 (3d Cir. 2008), but compared to criminal statutes, civil statutes require "lesser degrees of specificity . . . to overcome a vagueness challenge." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992). The party challenging the statute for vagueness "must show that it is vague as applied to him." *Id.*

The NJTCCA's pertinent language makes it unlawful for a contract or notice to contain any "provision that violates any *clearly established legal right* of a consumer . . . established by State or Federal law." N.J.S.A. 56:12-15 (emphasis added). While the NJTCCA may not expressly define "clearly established legal rights," it sufficiently informs the public that those rights are provided for by other statutory or common law. In *McGarvey*, the Third Circuit addressed whether the Magnuson-Moss Warranty Act ("MMWA") created a "clearly established legal right," which if violated, would also constitute a violation of the NJTCCA. 486 F. App'x at 280. The plaintiffs in *McGarvey* alleged that the defendant violated their "clearly established legal rights" under the MMWA by offering a warranty for an anti-theft protection system for automobile windshield glass that tied a warranty benefit to the purchase of a replacement vehicle at a particular dealership. *Id.* at 278. They alleged that it contravened the statute's prohibition on "warranties that are conditioned on the consumer's use of a specific article or service." *Id.* at 278.

The Third Circuit turned to extrinsic aids and New Jersey case law for examples to help in determining whether the MMWA set forth a "clearly established legal right." *Id.* at 280. It first examined the NJTCCA's Assembly Statement which contained contract provisions the New Jersey Legislature deemed to contravene a consumer's "clearly established legal rights," "including a consumer's complete waiver of damages resulting from a seller's liability." *Id.* Then, the Third

18

Circuit turned to New Jersey case law where courts found plaintiffs stated a claim under the NJTCAA because the "alleged wrongdoing fell squarely within prohibited conduct under state or federal law." *Id.* at 281. For instance, a plaintiff stated a cause of action when the defendant failed to itemize a documentary service fee because "the state automotive sales practices regulation" made it unlawful to charge a consumer fees for documentary services without itemizing them. *Id.* (citing *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 278-80 (App. Div. 2007)). Another case held that plaintiff pleaded a cause of action under the NJTCCA where the sellers charged a $20.00 fee for returned checks because the Retail Installment Sales Act, which applied to the transaction, only allowed a fee when a check was returned for insufficient funds. *Id.* (citing *United Consumer Fin. Servs. Co. v. Carbo*, 410 N.J. Super 280, 306-07 (App. Div. 2009)).

The Third Circuit found that MMWA was "significantly less clear" than the examples discussed in legislative history or case law. *Id.* The language in the MMWA at issue stated "that a warrantor shall not condition its warranty 'on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name.'" *Id.* (quoting 15 U.S.C. § 2303(c).) From the statutory language alone, the Third Circuit had difficulty determining what conduct the MMWA prohibited because it failed to define its operative phrases, and they could be interpreted in different ways. *Id.* The Third Circuit also found that the MMWA's legislative history and regulatory guidelines equally unhelpful because they contained contradictory examples of permissible conduct and violations. *Id.* at 281-82. It therefore determined that whether the warranty violated a consumer's right under the MMWA was less clear than the example in the Assembly Statement or those violations held to support an NJTCCA claim, and thus, it did not constitute a "clearly established legal right" under the NJTCCA. *Id.* at 282.

Unlike the MMWA, however, the statutory provisions which Gomes relies on as "clearly defined legal rights" expressly provide what conduct is prohibited. He points to four provisions in the NJSSFA, which state that 1.) a sale of a tenant's personal property must be public; 2.) a self-storage facility must adhere to a strict notice-and-wait period before selling a tenant's property; 3.) a tenant shall have the right to redeem and recover his or her property prior to the sale; and 4.) a self-storage facility must describe the tenant's personal property to be sold in the notice. Gomes also relies on the Bankruptcy Code's prohibition on the termination or modification of a debtor's lease upon the commencement of their bankruptcy case and the Federal Rules of Civil Procedure and New Jersey Court Rules specific procedures for raising counterclaims. These statutes and rules plainly describe what type of conduct they prohibited or, like the Federal Rules of Civil Procedure, establish clearly defined inviolate rights. As such, the term "clearly established legal right" is neither unclear nor ambiguous in connection with the statutes on which Gomes relies. Thus, the NJTCCA is not vague as applied to defendants, which dooms their constitutional challenge. *San Filippo*, 961 F.2d at 1135.

**IV.** <u>Conclusion</u>

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. An appropriate order will be entered.

/s/ Katharine S. Hayden
Dated: March 31, 2015                                    Katharine S. Hayden, U.S.D.J.