**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN GOMES, JR., on behalf of himself and those similarly situated,<br><br>                        Plaintiff(s),<br><br>    v.<br><br>EXTRA SPACE STORAGE, INC.; EXTRA SPACE MANAGEMENT, INC.; and JOHN DOE COMPANIES 1-50,<br><br>                        Defendants. | Action No. 2:13-cv-929 (KSH)(CLW)<br><br>**OPINION** |

This matter comes before the Court on Plaintiff's Motion for Final Approval of the Settlement of the above-captioned matter brought by Plaintiff Steven Gomes, Jr. against Defendants Extra Storage Space, Inc. and Extra Space Management, Inc. ("Extra Space"), pursuant to the Class Action Settlement Agreement dated July 22, 2016 and the Amendment to the Class Action Settlement Agreement, dated April 26, 2017 ("Settlement Agreement"). The Court has reviewed the documents submitted by both parties, as well as letters from two objectors, and the Settlement Agreement itself. A fairness hearing took place on June 20, 2017. For the following reasons, Plaintiff's motion was granted.

    **I.    Background**

Extra Space rents out self-storage units and provides other services related to moving and packaging in New Jersey. Mr. Gomes entered into a rental agreement with Extra Space on September 15, 2011 for one self-storage unit in Hackensack. (Motion to Certify Class Brief, (henceforth "Brief"), ECF. No. 118 at 3.) When he failed to make his monthly rental payments in December 2011 and January 2012, Extra Space sent Mr. Gomes a Notice of Lien on January 19 informing him that the personal property in his storage unit would be sold at auction if he did not

pay the balance due under the rental agreement within 15 days. (Id.) However, Mr. Gomes called Extra Space and an assistant manager told him that the auction for his property would be held on March 15, 2012, and he could go to the storage facility and retrieve his property at any time before that date. (Id. at 4). However, in early March he discovered that the property had been sold at a public auction on February 16, 2012. (Id.) He believes that the value of the property sold totaled $8,747.00. (Id.)

Plaintiff filed a Class Action Complaint in Superior Court on January 11, 2013, alleging that Extra Space's rental agreements contained provisions that violated the New Jersey Self-Storage Facility Act (SSFA), the Truth-in-Consumer Contract, Warranty, and Notice Act (TCCWNA), and the Consumer Fraud Act (CFA). (Brief, ECF No. 118 at 4.) The complaint also alleged that Defendants frequently neglected to give customers timely notice of when their property would be sold and sold the property at auctions less than 15 days after advertising them. (Id. at 5). The class consisted of 154,726 people who had rental agreements with Extra Space similar to Plaintiff's between January 11, 2007 and November 18, 2014, and a Subclass of 8,833 people whose property had been sold at auction by Extra Space. (Id. at 8). Extra Space removed the case to the U.S. District Court for the District of New Jersey on February 15, 2013.

The parties entered into mediation on May 8, 2014, which did not resolve the issue. Plaintiff filed an Amended Class Action Complaint in this Court on October 1, 2014. Defendants filed a Partial Motion to Dismiss. On March 31, 2015, the Court denied the motion in part but dismissed claims that Extra Space charged unconscionable late fees. (Judge Hayden March 31, 2015 Opinion, ECF No. 66.) On December 14, 2015, Plaintiff filed a Motion for Class Certification, and re-filed it on March 11, 2016. On April 5, 2016, while the motion was pending, the parties participated in mediation once again. This time, they reached an agreement and Plaintiff withdrew the Motion for

2

Class Certification. (Brief, ECF No. 118 at 6). Preliminary approval of the Settlement Agreement was granted on March 3, 2017. Later, the parties discovered an error pertaining to the number of plaintiffs in the Settlement Subclass and that number was reduced from 8,833 to 7,716 in an Amendment to the Settlement Agreement on April 27, 2017. (Id. at 7). Under the terms of the Settlement Agreement, those 7,716 Subclass members may pursue separate actions to recover for the sale of their property if it violated the SSFA. (Id. at 10). Every member of the Settlement Class will receive a $75.00 certificate towards Extra Space products and services in New Jersey. (Id. at 9). They will also receive $25 after the settlement administration expenses, Mr. Gomes' incentive award ($22,500), and attorneys' fees ($725,000) are paid. (Id. at 10). This money will come out of a Common Fund that Defendants are depositing $5,079,856.00 into. (Id.) Based on the following, this Court chose to grant final approval of the Settlement Agreement at the fairness hearing.

**II.     Standard of Review**

Settlement agreements for class action lawsuits must be approved by the trial court before they can go into effect. Fed. R. Civ. P. 23(e); *see also* In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995). Trial courts have discretion to approve class action settlements, overturned only when an appellate court finds abuse of discretion. Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799, 801 (3d Cir. 1974). The court must also determine that the settlement agreement is "fair, reasonable, and adequate." GMC Truck at 785 (citations omitted).

The Third Circuit has developed a nine-factor test to guide district courts in examining whether a settlement agreement is fair, reasonable, and adequate. These factors are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the

>best possible recovery; and (9) the range of reasonableness of the settlement in light of the attendant risks of litigation.

Id. (citing Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975)).

Approval of attorneys' fees is at the District Court's discretion, though the court must articulate why it believes the award of attorneys' fees is appropriate. McGee v. Cont'l Tire N. Am., Inc., No. 06-6234, 2009 U.S. Dist. LEXIS 17199, at *17 (D.N.J. March 4, 2009) (citing In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir. 2005). The Third Circuit uses seven factors for determining whether to approve the award:

>(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, n. 1 (3d Cir. 2000).

Incentive awards for class representatives are also common, though at the trial court's discretion. Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 118 (E.D. Pa. 2005). They "may be provided as a reward for the benefit visited on the class." Id. High incentive awards are possible. See Varacallo v. Mass Mut. Life Ins. Co., 226 F.R.D. 207, 257 (D.N.J. 2005) (collecting cases, including some where the class representative received over $20,000). The rationale is that class representatives "conferred benefits on all other class members and they deserve to be compensated accordingly." Id. at 258 (quotation omitted).

### III. Discussion

This Court believes that all of the Girsh factors have been met and approves the Settlement Agreement. There are two objectors to the settlement terms, but their objections do not convince the Court that the terms are inadequate. The Court also considers the attorneys' fees and incentive award agreed upon by the parties and finds them to be reasonable.

4

### A. Meeting the Girsh Factors

Plaintiff believes that the first Girsh factor weighs in favor of the Settlement Agreement. Because Extra Space does not admit liability, the case could go to trial if the Settlement Agreement is not approved. (Brief, ECF No. 118 at 19). A trial and potential appeals could easily "reduce the value of any recovery to the class." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 536 (3d Cir. 2004). Because trial is risky, it is logical for the class members to accept the award from the Settlement Agreement and move on.

The second Girsh factor – the reaction of the class to the settlement – also favors the Settlement Agreement. It asks courts to consider how many class members object to a settlement or ask to be excluded from it, in order to "gauge whether members of the class support the settlement." Krell v. Prudential Ins. Co. of Am., 148 F.3d 283, 318 (3d Cir. 1998). In the case at hand, there were 147 requests for exclusion and two objectors out of 154,726 class members. (ECF No. 118, at 20). Similarly, in the Prudential case, only about .2% of the class members requested to opt out of the settlement, leading the court to conclude that the second Girsh factor weighed in favor of the settlement. 148 F.3d at 318.

The third Girsh factor – the stage of the proceedings – is certainly not at issue in this case. The third factor ensures that "counsel had an adequate appreciation of the merits of the case before negotiating." Sullivan v. DB Invs., Inc., 667 F.3d 273, 321 (3d Cir. 2011) (citations omitted). Courts can consider how much discovery has taken place and how long litigation in the case has been going on for. Sullivan, 667 F.3d at 321. Plaintiff makes it clear that there was "extensive discovery" and that "the parties litigated this case for three-and-a-half years before entering into the settlement." (Brief, ECF No. 118 at 22-23). The parties and their counsel had enough time to understand the merits of their case and did not rush into settlement.

It is also beneficial for the class to accept the terms of this Settlement Agreement because of the risks of establishing liability. The fourth Girsh factor "examine[s] what the potential rewards (or downside) of litigation might have been" if the claims were not settled. Sullivan, 667 F.3d at 322 (quotation omitted). As noted above, Defendants do not admit liability and "the settlement fairness factors must be judged 'against the realistic, rather than theoretical, potential for recovery after trial.'" (Brief, ECF No. 118 at 23) (quoting Sullivan, 667 F.3d at 323). In Sullivan, one of the reasons the court concluded that the fourth factor favored settlement was that the defendant would not admit liability. 667 F.3d at 322.

The fifth factor – the risks of establishing damages – also favors the Settlement Agreement. Plaintiff acknowledge that proving damages at trial would be difficult, as there would have to be "more than 7,000 mini trials to establish the measure of damages" for the members of the Subclass alone. (Brief, ECF No. 118 at 25). According to Plaintiff, "the Court must determine whether the proposed settlement is within a range that experienced attorneys could accept in light of the relevant risks of litigation." (Id., at 24) (citing GMC Truck, 55 F.3d at 806). Plaintiff believes the Settlement Agreement provides an acceptable award to all class members when the alternative is a trial with an uncertain outcome.

The sixth Girsh factor – the risks of maintaining the class action through the trial – "measures the likelihood of obtaining and keeping a class certification if the action were to proceed." Sullivan, 667 F.3d at 322 (quotation omitted). This factor is not as important as the others when the class at issue is a settlement class. (Brief, ECF No. 118, at 25) (citing In re Safety Components Inc. Sec. Litig., 166 F. Supp. 2d 72, 91 (D.N.J. 2001)). However, Plaintiffs point out that if they were to go to trial, class certification "cannot be presumed." (Brief, ECF No. 118 at 16.) In McGee v. Cont'l Tire, the court remarked that "this factor weighs slightly in favor of

approval" when "the risk remains that the class could be decertified at a later stage." 2009 U.S. Dist. LEXIS 17199, at *17. Therefore, the sixth Girsh factor is satisfied in this case.

The seventh factor – the ability of the defendants to withstand greater judgment – is neutral when the issue has not been raised. See Id.; Sullivan, 667 F.3d at 323. Plaintiff also notes that "approved class action settlements tend to range from 1.6% to 14% of claimed maximum damages." (ECF No. 118, at 27) (citing In re Cendant Corp. Litig., 264 F.3d 201, 241 (3d Cir. 2001)). Even if it is possible for a defendant to pay a higher amount to the class members, a court will not find a settlement unfair for that reason; "in any class action against a large corporation, the defendant is entirely likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." Weber v. Gov't Empl. Ins. Co., 262 F.R.D. 431, 447 (D.N.J. 2009). It is reasonable for Plaintiff to accept the Settlement Agreement now rather than litigate or try to re-negotiate in hopes of a higher award.

The eighth and ninth factors are often considered together, asking "whether the settlement represents a good value for a weak case or a poor value for a strong case." Sullivan, 667 F.3d at 323 (quoting Warfarin, 391 F.3d at 538). Plaintiff believes the Settlement Agreement is fair, as it "was the result of extensive arms-length negotiations" and "provides exceptional benefits on behalf of members of the settlement class." (Brief, ECF No. 118 at 28.) They also believe that further litigation would be "expensive, and a burden to court dockets" and so settling now is preferable to continuing to litigate. (Id.)

### B. Addressing the Two Objections to the Settlement Agreement

The Court approves the Settlement Agreement despite the two objections because they do not present any argument sufficient to show that the Settlement Agreement is unfair, unreasonable,

or inadequate. As Plaintiff points out, "to have any impact on final approval of the Settlement, the objections must cast doubt upon the settlement's fairness, reasonableness, or adequacy." (Brief, ECF No. 118 at 20) (citing Federal Judicial Center, Manual for Complex Litigation (Fourth) §21.643 (2004)). One objector, Edward Anthony Shields, *pro se*, objects because the Settlement Agreement does not cover late fees he believes he was unfairly charged for. The other, John Schillizzi, *pro se*, objects because the Settlement Agreement does not provide him with enough money to compensate for the amount of property that Extra Space sold. Neither of these objections has any bearing on whether the Settlement Agreement should be approved.

Mr. Shields seeks "reimbursement for all the extra-ordinary late fees that Extra Space Storage charged me for being late only a few days," which, considering the number of months he was late, total $1,610. (Letter, ECF No. 113.) However, as discussed above, the claim that the late fees Extra Space charged were unconscionable was dismissed by the District Judge in 2015. Therefore, "the Court has no basis to consider this objection." (Brief, ECF No. 118 at 21.) Class Counsel also addressed the objection at the fairness hearing and made this point clear: "Judge Hayden in defendant's motion to dismiss, dismissed all the claims related to the late fees, so though we had initially brought those claims, they were dismissed, so they were not part of the settlement negotiations or the settlement, and that stands as a dismissed claim that we could not pursue on behalf of Mr. Shields. So we also believe that's an invalid objection." (Tr. At 7.) Mr. Shields also says the $75 certificate is "useless" to him because he "do[es] not plan to use their services again in the future." (Letter, ECF No. 113.) However, even if Mr. Shields does not wish to rent another storage unit, he can buy boxes and other packaging supplies with the certificate. If he knows someone who is moving or who needs a storage unit, he can also give the certificate to that person. (Tr. at 13, 15.) The Settlement Agreement should not be altered on the grounds that it is not

satisfactory to Mr. Shields, especially since there are ways he can benefit from it without renting a unit from Extra Space again.

Mr. Schillizzi, like lead plaintiff Mr. Gomes, had property at Extra Space that was sold without an adequate warning and an opportunity to pay his outstanding balance. (Letter, ECF No. 116.) The Settlement Agreement does not prevent him from suing Extra Space separately for more compensation. "Mr. Schillizzi… has the option to preserve his right to further litigation with respect to this, and he's been noticed of that." (Tr. at 23.) Therefore, this objection also fails to show how this Settlement Agreement is unfair, unreasonable, or inadequate.

### C.  Attorneys' Fees and Class Representative Incentive Award

Class Counsel request $725,000 to be paid out of the Common Fund. This is a reasonable amount because the attorneys "invested a great deal of time and assumed financial risks in the prosecution of the class claims." (Brief, ECF No. 118 at 29.) The Court acknowledges that "[t]here were a lot of changes and twists and turns that required extensive legal attention." (Tr. at 23.) Class Counsel have also made convincing arguments that their award meets all of the Gunter factors for determining the appropriateness of attorneys' fees.

There is little to say about the first factor – the size of the fund and the number of persons benefitted. This is not what courts would consider a "very large" settlement, which would be $100 million or higher. In re Cendant Corp., 232 F. Supp. 327, 337 (D.N.J. 2002). In those settlements, courts might decrease the attorneys' fees as the settlement fund increases because at that point the size of the fund is probably due to the number of class members and not to the attorneys' efforts. Id. This is not such a case.

As for the second factor – the presence or absence of substantial objections by members of the class – this is satisfied here because less than one percent of the class members excluded

themselves from the settlement, there were only two objections, and nobody objected to the attorneys' fees. See Rite Aid, 396 F.3d at 305 (finding this factor satisfied when there were only two objectors out of a class of 300,000).

Class Counsel believe the third, fourth, fifth, and sixth factors are easily met. They have "particular knowledge of class actions and consumer laws" and experience litigating such matters, achieving over 100 other class certifications. (Brief, ECF No. 118 at 32.) They also had to work "efficiently to meet all of the court-imposed and litigation-imposed time constraints." (Id. at 33.) The law firm also risked not reaching an agreement and not getting paid, as pay was contingent on success. Id.

The seventh factor – the awards in similar cases – is met in this case as well. In fact, Class Counsel is requesting 14.27% of the Common Fund. The Third Circuit has found that awards of attorneys' fees often range from nineteen to forty-five percent of the fund and that twenty-five percent is the average award. Cendant, 232 F. Supp. at 339 (citations omitted). As it appears that every Gunter factor is satisfied, the Court finds the award of attorneys' fees is reasonable in this case.

The Court also approves the incentive award for Mr. Gomes. It was mentioned but not disputed during the fairness hearing. (Tr. at 14.) Class Counsel believes that Mr. Gomes deserves this award not only as an incentive but to compensate him for the property he lost when Extra Space sold the contents of his unit. Id. He also actively participated in the litigation process, agreeing to "participate in further discovery and testify at trial if necessary." (Brief, ECF No. 118 at 40.) "He forestalled relief on his individual claims in order to ensure that relief was provided to the settlement class." (Id.) See also Varacallo, 226 F.R.D. at 258 (approving incentive award when class representatives "devoted a considerable amount of time and effort in assisting counsel").

Although his award might seem unfair when compared with the amount the other class members are receiving, any class member who still wishes to be compensated for the sale of their property is free to pursue those claims separately. The Court concludes that it is fair to compensate Mr. Gomes both for his property that was wrongfully sold and for his contribution to this lawsuit.

### IV. Conclusion

For the foregoing reasons, as indicated on the record on June 20, 2017, the Court approved Plaintiff's Motion for Final Approval.

**Dated:    July 13, 2017**

*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**